UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANTHONY PAPAPIETRO, et al,

                Plaintiff,

    - against -

POPULAR MORTGAGE SERVICING CO. et al,

                Defendants.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**

13-cv-2433 (SLT) (RML)

**TOWNES, United States District Judge,**

      Anthony and Rocco Papapietro ("Plaintiffs") commenced this action on April 23, 2013 against Popular Mortgage Servicing Company ("PMSI"), Litton Loan Servicing Company ("Litton"), and Ocwen Loan Servicing Company ("Ocwen") alleging violations of the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and various Pennsylvania state laws in connection with a mortgage loan originated on June 20, 2005 and secured on residential real property located in Stroudsburg, Pennsylvania. On November 11, 2013, defendants Litton and Ocwen asserted cross-claims for indemnification against PMSI. Currently before the Court is PMSI's motion for summary judgment (1) as to all claims alleged against PMSI in Plaintiffs' complaint, on the grounds that they are time barred and (2) as to cross-claims for indemnification by Litton and Ocwen. For the following reasons, PMSI's motion for summary judgment as to claims asserted by Plaintiffs is granted and denied as to cross-claims asserted by Litton and Ocwen.

## Legal Standard

Summary judgment is only appropriate where, considering "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). In determining whether there is a genuine issue of material fact, a court resolves all ambiguities and draws all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With that in mind, the pertinent facts, undisputed, or where disputed considered in Plaintiffs' favor, are as follows:

## Factual Background

On June 20, 2005, Anthony Papapietro and his father, Rocco Papapietro, executed a promissory note, mortgage, and related documents for a 30-year loan in the amount of $405,600 in favor of Wilmington Finance in connection with the purchase of residential real property located in Stroudsburg, Pennsylvania. That same day, the loan was assigned to Popular Financial Services and was thereafter serviced by defendant PMSI. (PMSI's 56.1 Stmt. ¶¶ 1-2; Compl. Ex. A.)

According to Anthony Papapietro's affidavit, he sent his first payment to Wilmington Finance, unaware that the loan had been assigned to Popular Financial Services. After he became aware of the change, he contacted Popular's servicer, PMSI, to arrange a "correction of his account because [his] payment was considered late." However, "[d]uring the time [the loan] was serviced by PMSI, [the] account continued to be reported late to the credit reporting

bureaus," despite the fact that he "contacted PMSI several times to try and have the error corrected[.]" (Anthony Papapietro Aff. ¶¶ 1-5).

According to Plaintiffs' complaint, PMSI added late fees to the account 27 times, for a total of $3,828.60, although Plaintiffs deny that the account was ever past due. Specifically, PSMI added late charges in the amount of $141.80 to each of the August – December 2005 statements. PMSI also sent multiple letters in November 2005 stating that the account was approximately $3,000 past due. Plaintiffs contend that although they continued to make timely monthly payments, they were charged additional late fees in April 2006, June – August 2006, October – November 2006, January – March 2007, and monthly from May 2007 through August 2008. PMSI repeatedly reported that the account was delinquent to credit reporting bureaus. (Compl. ¶¶ 13-17, 29, 62.)

According to Plaintiffs' complaint, in 2007, in addition to improperly charging Plaintiffs late fees, PMSI repeatedly failed to apply Plaintiffs' payments to the account although Plaintiffs made regular payments. Between April and October 2008, Plaintiffs received multiple letters stating that the account had a negative balance ranging from $19,976.42 to $7,198.54. In July 2008, Plaintiffs were notified that PMSI had not received payments for May, June, and July 2008. Although Plaintiff's promptly furnished proof that they made each of the payments, PMSI nevertheless attempted to foreclose on the property in July 2008. PMSI also sent Plaintiffs at least one blank monthly statement. (Compl. ¶¶ 34- 58, 65.)

Plaintiffs also contend that PMSI improperly diverted their payments to cover forced-placed insurance and property taxes, although Plaintiffs' insurance had never lapsed and property taxes were never delinquent. In October 2005, August 2006, and June 2008, PMSI requested proof of insurance on the property, which Plaintiffs promptly furnished on each occasion. In

3

October 2006, PMSI notified Plaintiffs that PMSI needed proof that property taxes had been paid and were not delinquent. Plaintiffs promptly furnished proof that property taxes were not delinquent. Nevertheless, in December 2006, PMSI obtained forced-placed insurance on the property and diverted Plaintiffs' monthly payments into an escrow account with a negative balance of $6,621.78 to pay for the purportedly unnecessary insurance premiums. PMSI obtained forced-placed insurance on the property again in August 2008. In March 2007, PMSI also charged Plaintiffs' escrow account for delinquent taxes, although Plaintiffs had fully paid their property taxes. Plaintiffs contend that from that point forward, each month, PMSI wrongfully diverted their monthly payments to cover the balance of this escrow account even though their insurance had never lapsed and they had paid their property taxes. Eventually, the forced-placed insurance premiums were refunded, but the late fees and funds diverted to escrow were never adjusted. Plaintiffs also contend that PMSI wrongfully reported that the account was delinquent to credit reporting bureaus, and although Plaintiffs repeatedly sent documentation to PMSI and the credit reporting bureaus demonstrating that the account was up to date, they were unable to correct the negative effects on their credit scores. (Compl. ¶¶ 18-33, 63-64, 66.)

In August 2008 and September 2008, Anthony Papapietro wrote letters to the Pennsylvania Department of Banking and the New York State Attorney General's Office to "request assistance in having [the] account properly credited for three payments [that were] sent which were not being posted to [the] account." (Anthony Papapietro Aff. at ¶ 6.) "On October 20, 2008, Plaintiffs were copied on the response from [PMSI] to the Pennsylvania Department of Banking. [In the response, PMSI] ... contend[ed] that the payment[s] were not being accepted because the Plaintiffs failed to pay for the forced-placed insurance and that payments were being placed in a suspense account until there was enough money to make a full payment or cure the

default. Additionally, [in its response, PMSI] noted that the Plaintiffs loan was being sold to Litton Loan Servicing, effective November 1, 2008." (Compl. ¶ 59.)

On August 29, 2008, pursuant to an Asset Purchase Agreement between, on one hand, Popular Financial Services, Inc. and PMSI as sellers, and, on the other hand, *inter alia*, Litton as purchaser, the loan was sold to Litton. The sale was effective November 1, 2008, and PMSI did not service the loan or have any interest in the loan after October 30, 2008. (PMSI's 56.1 Stmt. at ¶¶ 3-5). As explained above, Anthony Papapietro first learned of the sale to Litton in October 2008. (Anthony Papapietro Aff. ¶ 7.) He received a "Notice of Assignment, Sale or Transfer of Servicing Rights" from PMSI confirming that, effective November 1, 2008, servicing of the loan would be assigned to Litton. (Compl. Ex. I.)

Anthony Papapietro wrote to Litton in June 2009 requesting his account be reviewed. It does not appear from the record whether he received any response to this inquiry. In any event, on August 19, 2009, he hired an attorney to represent him and his father in connection with inaccurate reporting to credit agencies by PMSI. (Anthony Papapietro Aff. ¶¶ 9-10.) By complaint dated February 26, 2010, plaintiff Anthony Papapietro commenced an action against PMSI in the Supreme Court of the State of New York, County of New York, captioned *Anthony Papapietro v Popular Mortgage Servicing, Inc.*, Index No. 105846/2010, asserting claims against PMSI arising from PMSI's allegedly improper servicing of the loan. (PMSI's 56.1 Stmt. at ¶ 9.) Papapietro voluntarily withdrew the action on April 4, 2011. (*Id.* at ¶ 10.)

The loan was serviced by Litton until September 1, 2011, when Ocwen began servicing the loan. (Compl. Ex. R.) In October 2011, Plaintiffs sent a request for an accounting of all servicing to Ocwen, which responded on June 20, 2012 with a statement of the service history

for the loan. Plaintiffs contend that only upon receiving the June 2012 statement did they become aware that their account was charged excessive escrow fees.

Plaintiffs commenced the instant action on April 23, 2013 alleging violations of the FDCPA by Litton and Ocwen, and violations of TILA, RESPA, RICO, and various Pennsylvania state laws by PMSI, Litton, and Ocwen. (Dkt. No. 1.) On November 11, 2013, defendants Litton and Ocwen asserted cross-claims for indemnification against PMSI. (Dkt. No. 11.) Currently before the Court is PMSI's motion for summary judgment (1) as to all claims alleged against PMSI in Plaintiffs' complaint (Counts 2-7), on the grounds that they are time barred, and (2) as to Litton's and Ocwen's cross-claims for indemnification. (Dkt. No. 25.)

## Discussion

### 1. Plaintiffs' Federal Claims Against PMSI

PMSI asserts that all of Plaintiffs' claims against it are time-barred. Plaintiffs bring federal claims pursuant to (1) TILA, for PMSI's alleged failure to provide required disclosures in connection with forced-placed insurance and other fees, (2) RESPA § 2605, for PMSI's alleged failure to provide notice that the loan was assigned and failure to respond to qualified written requests,[1] and (3) RICO, for allegedly participating in a scheme using U.S. Mail to defraud Plaintiffs. It is undisputed that the longest applicable statute of limitations is four years. *See* 15 U.S.C. § 1640(e) (TILA statute of limitations for damages claim is "one year from the date of the occurrence of the violation"); 12 U.S.C. § 2614 (RESPA § 2605 statute of limitations is three

---

[1] In their complaint, Plaintiffs also attempt to bring a claim under RESPA § 2609, which limits lenders from requiring excessive escrow deposits. However, as Plaintiffs acknowledge in their brief, "this court has never found a private right of action under 12 U.S.C. § 2609." (Pls.' Br. at 4.) In light of Plaintiffs' concession, this Court deems Plaintiffs' RESPA § 2609 claim withdrawn. In any event, even if there were a private cause of action under RESPA § 2609, the Court would apply the same statute of limitations as applies to claims under RESPA § 2605. *See McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 587, 591 (E.D.N.Y. 2005) (explaining that there is no private right of action under RESPA § 2609, but if there were, a claim under § 2609 would be subject to either RESPA's one- or three-year statute of limitations).

6

years); *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) ("The statute of limitations for a civil RICO claim is four years."); *see also Deans v. Bank of Am.*, 10 CIV. 9582 RJH, 2011 WL 5103343, at *3 (S.D.N.Y. Oct. 27, 2011) (dismissing TILA, RESPA, RICO, and state law claims as time barred). The parties disagree, however, about precisely when each of Plaintiffs' federal claims arose and whether the limitations period was equitably tolled until 2012.

### A. When Did Plaintiffs' TILA Claims Arise?

"TILA requires creditors to clearly and accurately disclose all the material terms of a credit transaction." *Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 418 (E.D.N.Y. 2013). "'TILA does not require that the consumer illustrate that [she] has suffered any actual damage, but provides for a penalty. Congress sought to vest considerable enforcement powers in consumers as 'private attorneys general,' who by suing creditors for violations, can achieve widespread compliance without government intervention.'" *Follman v. World Fin. Network Nat. Bank*, 971 F. Supp. 2d 298, 301 (E.D.N.Y. 2013) (quoting *Aldrich v. Upstate Auto Wholesale of Ithaca, Inc.*, 564 F. Supp. 390, 394 (N.D.N.Y. 1982).

A private right of action under TILA arises on "the date of the occurrence of the violation." 15 U.S.C. § 1640(e). This case involves a "closed-end" credit transaction. "Closed end credit plans ... contemplate a single transaction, where 'the finance charge is divided into the term of the loan and incorporated into the time payments and thus the rate is computable by the consumer from the time he receives his first billing.'" *Follman*, 971 F. Supp. 2d at 301 (quoting *Goldman v. First Nat'l Bank of Chicago*, 532 F.2d 10, 19 (7th Cir. 1976)). "It is well-settled law that in 'closed-end credit' transactions[, for the purposes of calculating the statute of limitations,] ... the 'date of the occurrence of [the] violation' is no later than the date the plaintiff enters the

7

loan agreement, or possibly, when defendant performs by transmitting the funds to plaintiffs." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 285 (S.D.N.Y. 2011) (quoting *Cardiello v. Money Store, Inc.*, No. 00–CV–7332, 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001), *aff'd*, 29 F. App'x 780 (2d Cir. 2002) (quoting 15 U.S.C. § 1640(e)); *see also Johnson v. Scala*, 05 CIV. 5529 LTS KNF, 2007 WL 2852758, at *3 (S.D.N.Y. Oct. 1, 2007) ("Case law supports the notion that the statute of limitations for TILA claims does not start running upon the discovery of the non-disclosure, but, rather, upon the funding of the loan."); *McAnaney v. Astoria Fin. Corp.*, 04-CV-1101JFB WDW, 2007 WL 2702348 (E.D.N.Y. Sept. 12, 2007) *on reconsideration in part*, 04-CV-1101JFB WDW, 2008 WL 222524 (E.D.N.Y. Jan. 25, 2008) (in case involving residential mortgage loans, rejecting a 'discovery rule' and concluding that TILA claims arose, at the latest, upon funding of the loan.) Thus, Plaintiffs' TILA claim arose, at the latest, when PMSI transmitted funds to Plaintiffs.

A TILA claim only arises "if the disputed fees are considered to be finance charges under the statute and applicable regulations. 'In order to be considered a finance charge, a charge must be incident to, or a condition of, the extension of credit.'" *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 147 (E.D.N.Y. 2009) (quoting *Pechinski v. Astoria Fed. Sav. and Loan Assoc.*, 345 F.3d 78, 80 (2d Cir. 2003); *see also* 15 U.S.C. § 1605(a) ("Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor *as an incident to the extension of credit.*") (emphasis added); 12 C.F.R. § 226.18(d). Generally, the "determination of whether charges are incident to the extension of credit and therefore included within the definition of the finance charge is extremely fact-intensive and the critical inquiry is

whether the creditor only would have provided the loan with a guarantee that the mortgagor would pay the fee." *McAnaney*, 665 F. Supp. 2d at 147 (citations, punctuation, and quotation marks omitted).

PMSI asserts that it extended credit to Plaintiffs in 2005, when the mortgage loan was originated, and thus, Plaintiffs' TILA claims arose in 2005 – eight years before Plaintiffs commenced the instant action. However, Plaintiffs do not assert that PMSI failed to comply with TILA when originating their loan. Rather, they contend that PMSI did not provide required disclosures in connection with the extensions of credit made in December 2006 and August 2008, when PMSI debited Plaintiffs' escrow account to fund insurance that PMSI improperly forced-placed on the property. Generally, "[i]nsurance premiums are ... not considered 'finance charges' if the insurance coverage may be obtained from an insurer of the consumer's choice," however, "numerous courts have persuasively held that when a lender force-places insurance not contemplated in the mortgage agreement, the associated premiums are not exempt from disclosure under TILA." *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255, 266-67 (N.D.N.Y. 2013) (collecting cases) (finding that "plaintiffs have plausibly alleged that the flood insurance defendants force-placed on their properties was not contemplated in or authorized by the mortgage agreements. Therefore, they sufficiently allege that the force-placed flood insurance premiums constitute new credit transactions that raised their overall indebtedness and are 'finance charges' that defendants were required to disclose under TILA."). Given that PMSI was required to make additional TILA disclosures in December 2006 and August 2008, when it extended credit to Plaintiffs to cover the forced-placed insurance premiums, Plaintiffs' TILA claims arose, at the latest, in August 2008 – the last time that PMSI transmitted funds to

Plaintiffs as an extension of credit.² In any event, PMSI is correct that under the one-year statute of limitations governing TILA claims, Plaintiffs' TILA claims, first asserted in their April 2013 complaint, are time barred unless the limitations period is equitably tolled.

### B. When Did Plaintiffs' RESPA § 2605 Claims Arise?

RESPA was enacted to provide "consumers ... with greater and more timely information on the nature and costs of the settlement process and [to ensure that consumers] are protected from unnecessarily high settlement charges...." 12 U.S.C. § 2601; *see also Nelson v. JPMorgan Chase Bank*, 707 F. Supp. 2d 309, 315 (E.D.N.Y. 2009) ("RESPA was enacted to enable consumers to better understand the home purchase and settlement process (with respect to federally regulated mortgage loans) and, where possible, to bring about a reduction in settlement costs.") (citing 12 U.S.C. §§ 2603, 2604). Plaintiffs assert claims against PMSI under § 2605, on two grounds: for PMSI's failure to make required disclosures in connection with "transfer of servicing" and failure to "respond[] to qualified written requests." (Compl. ¶ 165(a)).

First, RESPA § 2605(b) requires loan servicers to provide notice to borrowers "in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b); *see also Lee v. E*Trade Fin. Corp.*, 12 CIV. 6543 PAE, 2013 WL 4016220, at *4 (S.D.N.Y. Aug. 6, 2013). Plaintiffs' loan was assigned to PMSI on June 20, 2005 and PMSI assigned the loan to Litton on November 1, 2008. Affixed to Plaintiff's complaint is a "Notice of Assignment, Sale or Transfer of Servicing Rights" from PMSI informing Plaintiffs that effective November 1, 2008, servicing of the loan would be assigned to Litton. (Compl. Ex. I.)

---

² Indeed, although PMSI was a mere servicer rather than a creditor, and thus might not have been required to provide TILA disclosures "before the ... insurance was force-placed, they arguably became a creditor by force-placing allegedly unauthorized insurance." *Casey*, 915 F. Supp. 2d at 267 (citing *Morris v. Wells Fargo Bank N.A.*, No. 2:11–CV–474, 2012 WL 3929805, at *12 (W.D.Pa. Sept. 7, 2012) ("The weight of authority recognizes that force-placing unauthorized insurance constitutes a new credit transaction involving new finance charges within the scope of 12 C.F.R. § 226.18 where the amount of the plaintiff's indebtedness is increased.")).

Plaintiffs nevertheless assert claims against PMSI for nondisclosure of "transfer of servicing." (Compl. ¶ 165(a)). Assuming that the notice that Plaintiffs received was, in some unspecified manner, deficient, at the latest, Plaintiffs' RESPA § 2605(b) claim arose on November 1, 2008, when PMSI allegedly neglected to provide Plaintiffs with proper notice of the assignment to Litton.

Second, although it has since been amended, at the time, RESPA § 2605(e) required loan servicers to respond within 20 days to borrowers' qualified written requests for account information and to make appropriate corrections to borrowers' accounts within 60 days. 12 U.S.C. § 2605(e). Plaintiffs' complaint does not allege when Plaintiffs sent qualified written requests to PMSI, but, given that PMSI assigned the loan and all servicing obligations to Litton, effective November 1, 2008, Plaintiffs could not have sent a qualified written request to PMSI after November 1, 2008. Accordingly, at the latest, Plaintiffs' RESPA § 2605(e) claims arose on November 1, 2008, after which point it was Litton, and not PMSI, that was obligated to respond to any qualified written requests.

"Under RESPA, any action for violation of § 2605 must be brought within three years." 12 U.S.C. § 2614; *see also Lee*, 2013 WL 4016220, at *4 (finding RESPA § 2605 claims based on failure to notify borrower of assignment time barred by three-year statute of limitations). Given that both of Plaintiffs' RESPA § 2605 claims against PMSI arose, at the latest, on November 1, 2008, Plaintiffs' claims, first asserted in their April 2013 complaint, are time barred unless the limitations period is equitably tolled.

### C. When Did Plaintiffs' RICO Claims Arise?

Plaintiffs' contend that PMSI violated RICO, subsection 18 U.S.C. § 1962(c), when "[PMSI] devised and implanted [*sic*] a scheme to defraud the Plaintiffs by imposing

11

unauthorized forced-placed insurance fees/escrow fees/ and or foreclosure property inspection fees causing the loan payments Plaintiffs made to be misapplied therefore causing an appearance of a default when none existed," where "mails and wires were used in furtherance of the scheme," causing injury to Plaintiffs. (Compl. ¶¶ 182-191.) Subsection 1962(c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C.A. § 1962(c). Although it is not clear from Plaintiffs' complaint what "pattern of racketeering activity or collection of unlawful debt" PMSI purportedly engaged in,[3] for the purposes of this motion, PMSI assumes that Plaintiffs state a RICO claim and moves for summary judgment on the grounds that *any* RICO claim against PMSI is time barred.

In a RICO case, "the first step in the statute of limitations analysis is to determine when the plaintiff sustained the alleged injury for which the plaintiff seeks redress. The court then determines when the plaintiff 'discovered or should have discovered the injury and begin[s] the four-year statute of limitations period at that point.'" *Koch v. Christi's Int'l PLC*, 699 F.3d 141, 150-51 (2d Cir. 2012) (quoting *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998)). Generally, the limitations period begins to run when a plaintiff has either "actual or inquiry notice of the injury." *Id.*

Here, because Plaintiffs' RICO claim is vague and amorphous, it is difficult to determine precisely which injury or injuries forms Plaintiffs' RICO claim. To the extent Plaintiffs complain of forced-placed insurance premiums and late fees, they were clearly on "actual or inquiry notice" of these injuries as early as 2006, but certainly by late 2008. In December 2006,

---

[3] Under similar circumstances, courts in this Circuit have found that no RICO claims could be stated. *See Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 408-412 (E.D.N.Y. 2013); *Grimes*, 785 F. Supp. 2d at 298-301; *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 215-216 (D. Conn. 2010).

12

Plaintiffs received a statement clearly showing an escrow balance of over $6,000, where no such balance was reported in the previous month's statement. This would have prompted reasonable borrowers in the same position to investigate. Thereafter, monthly statements showed fluctuations to the escrow, principal, and interest balances, further placing Plaintiffs on notice that their payments were not being applied to pay off the principal balance of the loan. Plaintiffs were actually aware of many of the complained-of errors by August 2008 and September 2008, when they wrote letters to the Pennsylvania Department of Banking and the New York State Attorney General's Office seeking assistance in correcting certain errors. In any event, Plaintiffs irrefutably had actual notice of PMSI's escrowing of fees for forced-placed insurance upon receiving a letter in October 2008, in which PMSI explained "to the Pennsylvania Department of Banking ... that [Plaintiffs'] payment[s] were not being accepted because the Plaintiffs failed to pay for the forced-placed insurance and that payments were being placed in a suspense account until there was enough money to make a full payment or cure the default." (Compl. ¶ 59.) Thus, at the latest, Plaintiffs' RICO claims arose in October 2008. Plaintiffs nevertheless did not commence this action until April 23, 2013, more than four years after they knew that PMSI had erroneously charged them forced-placed insurance premiums, late fees, and foreclosure-related inspection fees. Accordingly, Plaintiffs' RICO claims against PMSI are time barred, unless the limitations period is equitably tolled.

### D. Are the Statutes of Limitations Applicable to Plaintiffs' TILA, RESPA § 2605, and RICO Claims Tolled until 2012?

Claims under TILA, RESPA, and RICO may be tolled in cases involving fraudulent concealment. *See Williams v. Aries Fin., LLC*, 09-CV-1816 (JG)(RML), 2009 WL 3851675, at *6, 8 (E.D.N.Y. Nov. 18, 2009) ("Although the Second Circuit has not yet resolved the issue, every circuit court that has considered the issue has held that equitable tolling principles apply to

13

TILA" and "district courts in this circuit have applied these principles to RESPA."); *Koch*, 699 F.3d at 157 (explaining that "[u]nder federal common law, [the RICO] statute of limitations may be tolled due to the defendant's fraudulent concealment.") (quotation marks and citation omitted). The doctrine of fraudulent concealment tolls the statute of limitations "if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Id.* (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999) (internal citation omitted). "The 'burden of proving that tolling is appropriate rests on the plaintiff.'" *Deswal v. U.S. Nat. Ass'n*, 13 CV 03354 RJD MDG, 2014 WL 1932589, at *2 (E.D.N.Y. May 14, 2014) (finding, *inter alia*, TILA and RESPA claims not tolled by fraudulent concealment) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).

Plaintiffs contend that the statutes of limitations applicable to their TILA, RESPA, and RICO claims are tolled until June 20, 2012 – the date that they received their full servicing history from Ocwen. Prior to that, Plaintiff's contend that PMSI concealed their claims by failing to provide required disclosures, failing to respond to their qualified written requests, and failing to otherwise provide explanations for fees. In TILA and RESPA cases, courts in this Circuit "have held uniformly that fraudulent conduct *beyond the nondisclosure itself is* necessary to equitably toll the running of the statute of limitations." *Deswal*, 2014 WL 1932589, at *2 (E.D.N.Y. May 14, 2014) (quoting *Grimes*, 785 F. Supp. 2d at 286 ("[I]f the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified.") (citations omitted, emphasis added in

*Deswal*). This is because "fraudulent concealment ... denotes efforts by the defendant—above and beyond the wrongdoing upon which the plaintiff's claim is founded—to prevent the plaintiff from suing in time." *McAnaney*, 2007 WL 2702348, at *9 (quotation marks and citation omitted). Thus, in order to establish fraudulent concealment, Plaintiffs must point to more than the underlying TILA and RESPA non-disclosure violations.

Plaintiffs contend that PMSI concealed their claims from them by failing to explain the precise nature of the disputed fees. However, "[c]oncealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Williams v. Aries Fin., LLC*, 09-CV-1816 (JG)(RML), 2009 WL 3851675, at *8 (E.D.N.Y. Nov. 18, 2009) (quoting *Moll v. U.S. Life Title Ins. Co. of New York*, 700 F. Supp. 1284, 1291 (S.D.N.Y. 1988)). Plaintiffs have not presented any evidence even suggesting that PMSI concealed the existence or nature of the fees in order to mask Plaintiffs' cause of action. *Compare McAnaney*, 357 F. Supp. 2d at 587 (finding fraudulent concealment adequately pleaded where the plaintiffs alleged that the "Defendants ... engaged in fraudulent, misleading, and deceptive efforts to conceal the true nature of their conduct ... [by] collect[ing] the charges and fees and then return[ing] some, but not all, of the money owed without advising the Plaintiffs that any monies were charged in error.").

Moreover, PMSI sent monthly statements to Plaintiffs that stated suspicious fluctuations in the account balance. The doctrine of fraudulent concealment will not toll the statute of limitations "once the plaintiff knows of the operative facts that form the basis of his claim such that he could discover his cause of action through the exercise of diligence," and, indeed, "[a]ny fact that should excite [a plaintiff's] suspicion is the same as actual knowledge of his entire claim." *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 224-25

15

(E.D.N.Y. 2003) (collecting cases) (quotation marks and citations omitted). "The critical determinant is when 'a significant fact emerges,' not when plaintiffs realize the specific details of their alleged claims." *Id.* Here, significant facts that should have led Plaintiffs, had they been exercising due diligence, to discover their claims emerged as early as 2006, but certainly by late 2008, when Plaintiffs received a letter from PMSI *expressly* explaining that their monthly payments were being diverted to pay for an outstanding balance for forced-placed insurance. Thus, Plaintiffs have not met their burden in establishing either that PMSI fraudulently concealed Plaintiffs' claims or that Plaintiffs exercised due diligence. Accordingly, the applicable statutes of limitation were not tolled and Plaintiffs' federal claims against PMSI are time barred.

### 2. Plaintiffs' Pennsylvania State Law Claims Against PMSI

Plaintiffs assert claims against PMSI under Pennsylvania state common law for: (1) breach of contract on the basis that the improper fees breached the promissory note, mortgage, and related documents signed by Plaintiffs and Wilmington Finance when originating the loan; (2) breach of fiduciary duty on the basis that PMSI, acting as Plaintiffs' fiduciary, charged excessive forced-placed insurance premiums; and (3) intentional infliction of emotional distress, premised on PMSI's allegedly wrongful attempt to foreclose on the mortgage and improperly charge large sums of money for fees, late charges, interest, and escrow. PMSI moves for summary judgment on the grounds that Plaintiffs' state law claims are time barred by the applicable statutes of limitation.

The longest statute of limitations applicable to Plaintiffs' state law claims is four years. 42 Pa. Cons. Stat. Ann. § 5525(8) (four-year statute of limitations applicable to breach of contract claims); 42 Pa. Cons. Stat. Ann. § 5524(2) and (7) (two-year statute of limitations applicable to claims for emotional distress and breach of fiduciary duty). Under Pennsylvania

law, the statute of limitations begins to run at "the time the cause of action accrued." 42 Pa. Cons. Stat. Ann. § 5502. The Supreme Court of Pennsylvania, Pennsylvania's highest court, has explained that "a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion," and thus "begins to run as soon as the right to institute and maintain a suit arises." *Fine v. Checcio*, 582 Pa. 253, 266, 870 A.2d 850, 857 (2005).

Here, Plaintiffs' claims against PMSI are all premised on purportedly improper fees that PMSI charged to their account between 2005 and 2008. The latest any claim against PMSI could have arisen was November 1, 2008 – the effective date of the sale and assignment of Plaintiffs' loan by PMSI to Litton. Thus, the latest Plaintiffs could have commenced these claims against PMSI was four years later – on November 1, 2012. However, Plaintiffs did not commence the instant action until April 23, 2013, nearly six months too late.

Plaintiffs allege that Pennsylvania's "discovery rule" and the doctrine of fraudulent concealment "make the claims timely." (Pls.' Br. at 5.) Under Pennsylvania law, "the discovery rule … exclude[s] from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury." *Fine*, 582 Pa. at 266-27. "[T]he salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, *to know that he is injured* and by what cause." *Id.* (emphasis added). Under Pennsylvania law, as under federal law, "[t]he doctrine [of fraudulent concealment] is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud

17

in the broadest sense, which includes an unintentional deception." *Id.* at 270-27 (citations omitted).

Here, neither the discovery rule nor the doctrine of fraudulent concealment can revive Plaintiffs' time barred claims. Plaintiffs' were not "unaware" of their injury until 2012. Rather, they knew or should have known they were injured as early as 2006, when they received monthly account statements showing a large negative balance in their escrow account. In any event, by late 2008, they irrefutably knew they were injured; they had filed complaints with the Pennsylvania Department of Banking and the New York State Attorney General's Office and received a response from PMSI expressly explaining that Plaintiffs' payments were being diverted to cover forced-placed insurance premiums. Because Plaintiffs *knew* they were injured, at the latest, when they received the response from PMSI on October 20, 2008, and did not commence the instant action within four years of that date, their state law claims are time barred.

### 3. Litton's and Ocwen's Cross-Claims Against PMSI

Given that Plaintiffs' claims against Litton and Ocwen remain outstanding, PMSI's motion for summary judgment as to contractual indemnification cross-claims by co-defendants Litton and Ocwen is denied as premature.

## Conclusion

For the foregoing reasons, PMSI's motion for summary judgment as to Plaintiffs' claims is granted. PMSI's motion for summary judgment as to indemnification cross-claims by Litton and Ocwen is denied as premature.

**SO ORDERED**

/s/ Sandra L. Townes
_____
SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
November 7, 2014